IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK FERRELL and CYNTHIA JOHNSON-FERRELL, | ) ) ) |
| Plaintiffs, | ) ) ) No. 06 C 5382 |
| v. | ) ) |
| WILLIAM SOTO, JOHN KEANE, in their official and individual capacities, UNNAMED POLICE SUPERVISOR, and the CITY OF CHICAGO, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

In their ten-count Amended Complaint, Plaintiffs Mark Ferrell and Cynthia Johnson-Ferrell allege that Defendant Police Officers William Soto, John Keane, and an unnamed Police Supervisor, as well as the City of Chicago,[1] violated their constitutional rights pursuant to 42 U.S.C. § 1983. *See* 28 U.S.C. § 1331. Plaintiffs also allege state law claims of replevin, assault, battery, and negligence based on the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Before the Court are the parties' cross-motions for summary judgment under Federal Rule of Civil Procedure 56(c). For the following reasons, the Court denies Plaintiffs' summary judgment motion and grants Defendants' summary judgment motion as to Plaintiffs' constitutional claims

---

[1] On April 2, 2007, the Court granted the City's Motion to Structure Discovery and thereby stayed "purely *Monell*" discovery until the completion of discovery and summary judgment on the underlying substantive claims against the individual police officers. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed 2d 806 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.") (emphasis in original). (R. 34-1.)

in Counts II, III, IV and V. Because Plaintiffs' constitutional claims against the individual police officers fail, Plaintiffs' constitutional claims against the City also fail. *See Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000) (municipality's liability for constitutional injury predicated on individual officers' liability). Last, the Court declines to exercise its supplemental jurisdiction over Plaintiffs' state law claims as alleged in Counts VI through X because the Court is dismissing Plaintiffs' claims over which the Court has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

## BACKGROUND

### I. Northern District of Illinois Local Rule 56.1

Because both Plaintiffs and Defendants move to strike certain statements of facts, the Court first turns to Northern District of Illinois Local Rule 56.1. When determining summary judgment motions, the Court derives the background facts from the parties' Local Rule 56.1 statements. Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Specifically, Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Ammons v. Aramark Uniform Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.,* 403 F.3d 940, 944 (7th Cir. 2005). The parties' statements must contain short numbered paragraphs including references to the affidavits, parts of the record, and

other supporting materials. *See id.; see also Ammons,* 368 F.3d at 817.

The purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006). The types of evidentiary material available to support Local Rule 56.1 statements are numerous, but the most common materials include affidavits, deposition transcripts, and business documents. *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). Under Federal Rule of Civil Procedure 56(e), supporting and opposing affidavits must show that the affiant is competent to testify to the matters at hand, and the affidavit must contain facts that would be admissible into evidence. *Markel v. Board of Regents of the Univ. of Wis.*, 276 F.3d 906, 912 (7th Cir. 2002); *see also Eisenstadt v. Centel Corp.,* 113 F.3d 738, 742 (7th Cir. 1997) ("hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial").[2]

A litigant's failure to respond to a Local Rule 56.1 statement results in the Court admitting the uncontroverted statement as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). In addition, the requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon,* 233 F.3d at 528. Finally, the Court may disregard statements and responses that do

---

[2] The Court notes that Mark Ferrell testified at his deposition that when he left the used car lot at 9:00 p.m. on the day before his arrest, both of his dogs were tied up with chains. (R. 190-1, Defs.' Stmt. Facts, Ex. D, M. Ferrell Dep., at 87-88; R. 202-3, Defs.' Joint Resp., Ex. C., M. Ferrell Dep., at 97.) Further, Mark Ferrell testified that when he returned to the car lot the next morning – the day of his arrest – the police officers had already arrived. (*Id*., M. Ferrell Dep., at 88.) Accordingly, any averments in Plaintiffs' later-filed affidavits contradicting this testimony cannot create an issue of fact to avoid summary judgment. *See Ineichen v. Ameritech,* 410 F.3d 956, 963 (7th Cir. 2005) ("parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions") (citation omitted).

not properly cite to the record. *See Cichon v. Exelon Generation Co., L.L.C.* 401 F.3d 803, 809-10 (7th Cir. 2005); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). With these standards in mind, the Court turns to the relevant facts of this case.

## II.     Relevant Facts

Plaintiffs Mark Ferrell and Cynthia Johnson-Ferrell reside at 9921 S. Lowe Street in Chicago, Illinois, and own and operate a commercial business at 10632 S. Michigan Avenue in Chicago. (R. 183-7, Pls.' Rule 56.1 Stmt. Facts ¶¶ 3, 11.) Plaintiffs' business is a used car sales lot that is partially surrounded by a chain-link fence and has a trailer on it. (*Id.* ¶ 20; R. 183-6, Pls.' Exs. #22, #23; Defs.' Stmt. Facts ¶ 14.) Plaintiffs owned two Rottweiler dogs – Max and Candy Lady – who were at the used car lot on March 26, 2006. (Pls.' Stmt. Facts ¶¶ 10, 22, 40.) That same day, Officer Soto was detailed to the Animal Abuse Control Team and Sergeant Steve Brownstein was working with Officer Soto as his supervisor. (R. 190-1, Defs.' Rule 56.1 Stmt. Facts, ¶¶ 4, 5.) According to Officer Soto's deposition testimony, Officer Soto and Sergeant Brownstein responded to a call from the City's Department of Animal Care and Control about a complaint concerning two dogs in duress at Plaintiffs' used car lot.[3] (*Id.* ¶ 6.)

After Officer Soto and Sergeant Brownstein arrived at the car lot, Officer Soto saw a male dog on the trailer's porch. (*Id.* ¶ 10.) Officer Soto and Sergeant Brownstein then walked onto Plaintiffs' used car lot to look at the dog. (*Id.* ¶ 11.) The police officers entered the car lot

---

[3] In their Rule 56.1 response, Plaintiffs argue that there was no call or complaint regarding two dogs in duress at their used car lot, but fail to rebut Officer Soto's deposition testimony with *any* evidence. Because Plaintiffs' response does not cite to any evidence refuting Defendants' assertion, the Court admits Defendants' statement as true. *See Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("when a responding party's statement fails to controvert the facts as set forth in the moving party's statement in the manner dictated by the rule, those facts shall be deemed admitted for purposes of the motion.").

without a search warrant. (Pls.' Stmt. Facts ¶¶ 12, 30.) Thereafter, Officer Soto saw the male dog sitting with his hind quarters and backside on a higher step of the trailer's porch and his front paws on a lower step. (Defs.' Stmt. Facts ¶ 15.) To Officer Soto, the male dog appeared to be uncomfortable because he had little freedom of movement. (*Id.* ¶ 16.) Officer Soto also observed the female dog on the porch. (*Id.* ¶ 18.) He noticed that both dogs had chains around their necks instead of collars. (*Id.*) Officer Soto then approached the dogs and saw signs of abuse related to the dogs being restrictively chained – such as abrasions around their necks and the fact that the dogs had trouble breathing. (*Id.* ¶¶ 19, 20, 21, 24, 25, 28, 33.) Moreover, Officer Soto testified that he had seen injuries similar to these in other animal abuse cases. (*Id.* ¶ 36.) Officer Soto further testified that he saw dried feces on the porch indicating that the dogs had been in that condition for a while. (*Id.* ¶ 26.)

Mark Ferrell then arrived at the car lot and told Officer Soto that he was the owner of the dogs, after which Officer Soto arrested him. (*Id.* ¶¶ 39, 40.) After arresting Mark Ferrell for violations of cruelty to animals under Illinois statute 510 ILCS 70/3.01, Officer Soto signed two criminal complaints against Mark Ferrell. (Pls.' Stmt. Facts ¶¶ 14, 15; Defs.' Stmt. Facts ¶ 45.) Officer Keane of the Chicago Police Department's Animal Abuse Control Team was also at the scene of the arrest. (Defs.' Stmt. Facts ¶¶ 41, 42.) The parties, however, dispute Officer Keane's role in Mark Ferrell's arrest. The police officers seized the dogs and the City's Department of Animal Care and Control then took the dogs. (*Id.* ¶ 48; Pls.' Stmt. Facts ¶ 12.) Animal Care and Control subsequently euthanized Plaintiffs' dogs. (Pls.' Stmt. Facts ¶ 29.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to

5

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, ___ U.S. ___, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

## ANALYSIS

### I.     False Arrest & False Imprisonment – Counts II & III

In Counts II and III of their Amended Complaint, Plaintiffs bring claims of false arrest and false imprisonment against the individual police officers. The existence of probable cause to arrest precludes Section 1983 claims for false arrest and false imprisonment. *Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 762 (7th Cir. 2006); *Mustafa v. City of Chicago,* 442 F.3d 544, 547 (7th Cir. 2006) ("Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution."). "This is so even where the defendant officers allegedly acted upon a malicious motive." *Id*. The Court thus turns to the legal basis for Mark Ferrell's arrest for animal cruelty.

Probable cause "is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances." *United States v. Reed,* 443 F.3d 600, 603 (7th Cir. 2006). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 243 n.13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). To have probable cause for an arrest, "law enforcement agents must reasonably believe, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspect had committed or was committing an offense." *Washington v. Haupert,* 481 F.3d 543, 547 (7th Cir. 2007). "Probable cause is not evaluated by the court based upon 'the facts as an omniscient observer would perceive them,' but instead is determined by the facts 'as they would have appeared to a reasonable person in the position of the arresting officer.'" *Williams v. Rodriguez,* 509 F.3d 392, 398-99 (7th Cir. 2007) (citation omitted). "In determining whether suspicious circumstances rise to the level of probable cause, officers are entitled to draw reasonable inferences based on their training and experience." *Reed*, 443 F.3d at 603.

Whether Officer Soto had probable cause to arrest Mark Ferrell necessarily depends on the applicable Illinois criminal statute for cruelty to animals, 510 ILCS 70/3.01. *See Pourghoraishi*, 449 F.3d at 761. Section 3.01 states in relevant part:

> No person or owner may beat, cruelly treat, torment, starve, overwork or otherwise abuse any animal.
>
> No owner may abandon any animal where it may become a public charge or may suffer injury, hunger or exposure.

510 ILCS 70/3.01.

The undisputed facts and circumstances within Officer Soto's knowledge at the time he

7

arrested Mark Ferrell for cruelty to animals include the fact that after Officer Soto responded to a call concerning two dogs in duress on Plaintiffs' used car lot, he observed two dogs with signs of abuse. Specifically, Officer Soto saw a male dog that appeared to be uncomfortable because the dog had little freedom of movement. Officer Soto also observed a female dog on the porch at the Plaintiffs' car lot and noticed that both dogs had chains around their necks instead of collars. After Officer Soto approached the dogs, he saw signs of abuse because the dogs were restrictively chained. These signs included abrasions around the dogs' necks and the fact that the dogs had trouble breathing. Officer Soto testified that he had seen injuries similar to these in other animal abuse cases. Also, Officer Soto saw dried feces on the porch indicating that the dogs had been in that condition for a while. Thereafter, Mark Ferrell approached the car lot and claimed ownership of the dogs. Viewing this evidence in a light most favorable to Plaintiffs – and based on the totality of circumstances as they would have appeared to a reasonable person in the position of Officer Soto – Officer Soto had probable cause that Mark Ferrell had committed or was committing cruelty to animals based on the dogs' injuries and condition, the complaint that the dogs were in duress, Officer Soto's observations, training, and experience, and Mark Ferrell's admission that he owned the dogs. Because Officer Soto had probable cause to arrest Mark Ferrell, the Court grants Defendants' summary judgment motion as to Counts II and III of the Amended Complaint.

Meanwhile, Plaintiffs argue that because the police officers entered their used car lot without a search warrant, the officers' arrest of Mark Ferrell was unlawful. Plaintiffs, however, did not bring a claim for unlawful entry or a claim based on an illegal search of their business. (*See* R. 66-1, Am. Compl.) Nevertheless, the police officers' warantless entry onto Plaintiffs'

used car lot – partially bordered by a chain-link fence – did not violate the Fourth Amendment. *See United States v. Tolar,* 268 F.3d 530, 532 (7th Cir. 2001) ("An open gate invites entry, and a chain-link fence does little to assert a privacy interest (as opposed to a property interest) in details visible from outside the fence."); *see also G.M. Leasing Corp. v. United States,* 429 U.S. 338, 351-55, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977) (IRS agents did not violate Fourth Amendment when they entered private parking lot and seized car). On the other hand, "[c]rossing the threshold of a home would be a different matter, in light of the special status dwellings enjoy under the Constitution." *Tolar,* 268 F.3d at 532.

## II.     Unreasonable Seizure – Count V

Next, Plaintiffs contend that the police officers' seizure of their dogs violated their Fourth Amendment rights. The Fourth Amendment, which is applicable to the states through the Fourteenth Amendment, states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." U.S. Const. amend. IV. A seizure of personal property or "effects" occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County*, 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (citation omitted); *see also Pepper v. Village of Oak Park,* 430 F.3d 805, 809 (7th Cir. 2005). It is well-established that destroying an individual's personal property meaningfully interferes with the individual's possessory interest in that property. *United States v. Jacobsen,* 466 U.S. 109, 124-25, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). To establish a Fourth Amendment violation, Plaintiffs must show that (1) the police officer's conduct constituted a seizure, and (2) the seizure was unreasonable. *Belcher v. Norton,* 497 F.3d 742, 747 (7th Cir. 2007).

9

### A. Seizure

The parties do not dispute that the police officers meaningfully interfered with Plaintiffs' possessory interest in their personal effects when the police officers took Plaintiffs' dogs. *See Pepper,* 430 F.3d at 809. Although the Seventh Circuit has yet to specifically hold that dogs – or more generally pets – are personal effects protected under the Fourth Amendment, other circuit courts have done so. *See San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose,* 402 F.3d 962, 975 (9th Cir. 2005) (killing dog is seizure under Fourth Amendment); *Altman v. City of High Point,* 330 F.3d 194, 204-05 (4th Cir. 2003) (by destroying dog, police officers "seized" plaintiff's effects); *Brown v. Muhlenberg Twp.,* 269 F.3d 205, 210 (3d Cir. 2001) (officer's destruction of plaintiff's dog constituted Fourth Amendment seizure). The Court notes that unlike these cases, Officer Soto, Sergeant Brownstein, and Officer Keane did not destroy or kill Plaintiffs' dogs. Nevertheless, it stands to reason that if the Fourth Amendment protects a person's television set and couch, dogs fall under this same analysis. *See Pepper,* 430 F.3d at 809 (couch and television set are personal "effects" protected under Fourth Amendment); *San Jose Charter,* 402 F.3d at 975 (dogs are more than personal effects, "emotional attachment to a family's dog is not comparable to a possessory interest in furniture"); *see also Anzalone v. Kragness,* 356 Ill.App.3d 365, 369, 292 Ill.Dec. 331, 826 N.E.2d 472 (Ill. 2005) ("in the eyes of common law, a pet 'is an item of personal property'") (citation omitted).

### B. Reasonableness

Because there is no dispute that the police officers seized Plaintiffs' dogs, the Court turns to whether the seizure was reasonable. *Green v. Butler,* 420 F.3d 689, 694 (7th Cir. 2005) (touchstone of Fourth Amendment inquiry is reasonableness); *see also Texas v. Brown,* 460 U.S.

730, 739, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (Fourth Amendment's central requirement is one of reasonableness). To assess whether the police officers' seizure of the dogs was reasonable, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (citation and internal quotations omitted).

Viewing the facts in a light most favorable to Plaintiffs, Defendants acted reasonably when they seized Plaintiffs' dogs and turned them over to the City's Department of Animal Care and Control. Specifically, after receiving a call about the dogs on Plaintiffs' car lot, Officer Soto observed indicia of animal abuse on the dogs, including abrasions around the dogs' necks and the fact that the dogs had trouble breathing. The police officers then seized the dogs after arresting Mark Ferrell for animal cruelty. Balancing the governmental interests at stake – as embodied by the City's Municipal Ordinance 7-12 concerning the care, treatment, control, and impoundment of animals and Illinois' animal cruelty statute – against Plaintiffs' Fourth Amendment interest in their dogs, the police officers' seizure was reasonable. Indeed, once a seizure is "justified by probable cause, that seizure is reasonable." *See Lee v. City of Chicago,* 330 F.3d 456, 466 (7th Cir. 2003). Because the police officers' seizure of Plaintiffs' dogs was reasonable, the Court grants Defendants' summary judgment motion as to Count V of the Amended Complaint.

### III. Conspiracy – Count IV

In Count IV of the Amended Complaint, Plaintiffs allege that the individual police officers conspired to falsely arrest and imprison Mark Ferrell, unlawfully seize his dogs, and

11

then maliciously charge and prosecute Mark Ferrell for crimes that he did not commit.[4] (R. 66-1, Am. Compl. ¶ 46.) To establish Section 1983 liability based on a civil conspiracy theory, Plaintiffs must demonstrate that the Defendants reached an understanding to deprive Plaintiffs of their constitutional rights. *Reynolds v. Jamison,* 488 F.3d 756, 764 (7th Cir. 2007); *see also Redwood v. Dobson,* 476 F.3d 462, 466 (7th Cir. 2007) ("The minimum ingredient of a conspiracy [ ] is an agreement to commit some future unlawful act in pursuit of a joint objective.").

Here, Plaintiffs' conspiracy claim fails because of the absence of an underlying violation of Plaintiffs' constitutional rights. *See Cefalu v. Village of Elk Grove,* 211 F.3d 416, 423 (7th Cir. 2000); *Indianapolis Minority Contractors Ass'n, Inc. v. Wiley,* 187 F.3d 743, 754 (7th Cir. 1999). In other words, because Plaintiffs' false arrest, false imprisonment, and unreasonable seizure claims fail, Plaintiffs cannot maintain an action that the police officers conspired to deprive them of these constitutional rights. *See Goldschmidt v. Patchett,* 686 F.2d 582, 585 (7th Cir. 1982) ("Section 1983 does not, however, punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises."). Because Plaintiffs' conspiracy claim is not actionable, the Court grants Defendants' summary judgment motion as to Count IV of the Amended Complaint.[5]

### IV. Plaintiffs' State Law Claims

---

[4] Plaintiffs do not bring a malicious prosecution claim in their Amended Complaint. (*See* R. 66-1, Am. Compl.)

[5] Because Plaintiffs have failed to establish that Defendants violated their constitutional rights, the Court need not address Defendants' qualified immunity arguments. *See Williams v. Rodriguez,* 509 F.3d 392, 398 (7th Cir. 2007).

Finally, the Court declines to exercise its supplemental jurisdiction over Plaintiffs' common law claims as alleged in Counts VI through X because the Court is dismissing Plaintiffs' claims over which the Court has original jurisdiction, namely, Plaintiffs' constitutional claims brought pursuant to Section 1983. *See Ross v. Board of Educ. of Twp. High Sch. Dist.*, 486 F.3d 279, 285 (7th Cir. 2007); 28 U.S.C. § 1367(c)(3). "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *East-Miller v. Lake County Highway Dep't,* 421 F.3d 558, 564-65 (7th Cir. 2005) (quoting *Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir. 1999)). Section 1367(d) tolls the statute of limitations for 30 days after the Court's dismissal of these supplemental claims allowing Plaintiffs to re-file their common law claims in state court in a timely manner. *See Williams Elec. Games, Inc. v. Garrity,* 479 F.3d 904, 907 (7th Cir. 2007). Therefore, the Court dismisses Plaintiffs' state law claims without prejudice.

**CONCLUSION**

For these reasons, the Court grants Defendants' summary judgment motion (R. 188-1), denies Plaintiffs' summary judgment motion (R. 183-1), and declines to exercise its supplemental jurisdiction over Plaintiffs' remaining state law claims. The Court also denies as moot Plaintiffs' motions to strike and motion for attorney's fees and Defendants' motion to strike. (R. 207-1, 209-1, 213-1, & 216-1.)

**Dated:** February 5, 2008

                                        **ENTERED**

                                 _____
                                 **AMY J. ST. EVE**
                                 **United States District Court Judge**